**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>OPENAI, INC.,<br>COPYRIGHT INFRINGEMENT LITIGATION<br><br>This Document Relates To:<br><br>Case No. 1:23-cv-08292<br>Case No. 1:23-cv-10211<br>Case No. 1:24-cv-00084<br>Case No. 1:25-cv-03291<br>Case No. 1:25-cv-03482<br>Case No. 1:25-cv-03483 | 25-md-3143 (SHS) (OTW)<br><br><br>**CLASS PLAINTIFFS'**<br>**MEMORANDUM OF LAW IN**<br>**OPPOSITION TO OPENAI'S**<br>**MOTION TO DISMISS**<br><br><br>Dated: August 14, 2025 |

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF CONTENTS .......................................................................................... ii

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT ........................................................................................................ 2

   I.  LEGAL STANDARD ..................................................................................... 2

   II. OPENAI WAIVED ITS RIGHTS UNDER 12(b)(6) TO MOVE TO DISMISS
OUTPUT CLAIMS ............................................................................................ 7

   III. PLAINTIFFS ADEQUATELY PLEAD OPENAI OUTPUTS ARE INFRINGING
CLAIMS ............................................................................................................. 7

      A.  Plaintiffs Adequately Plead Substantial Similarity ................................... 7

   IV. PLAINTIFFS ARE NOT REQUIRED TO ATTACH INFRINGING OUTPUTS ....... 13

   V.  PLAINTIFFS SHOULD, AT A MINIMUM, BE GRANTED LEAVE TO AMEND .. 14

CONCLUSION .................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ADR Int'l Ltd. v. Inst. for Supply Mgmt. Inc.*,
   667 F. Supp. 3d 411 (S.D. Tex. 2023)................................................................17

*Allstate Ins. Co. v. Elzanaty*,
   929 F. Supp. 2d 199 (E.D.N.Y. 2013) ...............................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................5

*Authors Guild v. Google, Inc.*,
   804 F.3d 202 (2d Cir. 2015) ............................................................................14

*BCM Dev., LLC v. Oprandy*,
   490 F. App'x 409 (2d Cir. 2013).......................................................................9

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................................5

*Castle Rock Entm't v. Carol Pub. Grp., Inc.*,
   150 F.3d 132 (2d Cir. 1998) ......................................................................11, 12

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) .....................................................................................13, 14

*Foman v. Davis*,
   371 U.S. 178 (1962) .........................................................................................18

*Freidus v. Barclays Bank PLC*,
   734 F.3d 132 (2d Cir. 2013) ..............................................................................5

*Hachette Book Grp., Inc. v. Internet Archive*,
   115 F.4th 163 (2d Cir. 2024) ...........................................................................14

*Halebian v. Berv*,
   644 F.3d 122 (2d Cir. 2011) ............................................................................15

*Hanagami v. Epic Games, Inc.*,
   85 F.4th 931 (9th Cir. 2023).............................................................................10

*Hord v. Jackson*,
   281 F. Supp. 3d 417 (S.D.N.Y. 2017) ........................................................16, 17

*In re Livent Sec. Litig.*,
   193 F. Supp. 2d 750 (S.D.N.Y. 2002) ...............................................................8

*Jacobs v. Carnival Corp.*,
   2009 WL 856637 (S.D.N.Y. Mar. 25, 2009).....................................................10

*Keiler v. Harlequin Enterprises Ltd.*,
   751 F.3d 64 (2d Cir. 2014) ...........................................................................5, 19

*Knitwaves, Inc. v. Lollytogs Ltd.*,
   71 F.3d 996 (2d Cir. 1995) ..................................................................................12

*Litchfield v. Spielberg*,
   736 F.2d 1352 (9th Cir. 1984) ............................................................................16

*McCarthy v. Dun & Bradstreet Corp.*,
   482 F.3d 184 (2d Cir. 2007) ...............................................................................18

*New York Times Co. v. Microsoft Corp.*,
   777 F. Supp. 3d 283 (S.D.N.Y. 2025) ................................................................13

*Niantic, Inc. v. Global++*,
   2020 WL 8620002 (N.D. Cal. Sept. 2, 2020)........................................................8

*Nichols v. Universal Pictures*,
   45 F.2d 119 (2d Cir. 1930) ..................................................................................12

*Penguin Random House v. Colting*,
   270 F. Supp. 3d 736 (S.D.N.Y. 2017) ...........................................................11, 13

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
   602 F.3d 57 (2d Cir. 2010) .............................................................................10, 12

*Reyher v. Children's Television Workshop*,
   533 F.2d 87 (2d Cir. 1976) ..................................................................................16

*Roth v. CitiMortgage Inc.*,
   756 F.3d 178 (2d Cir. 2014) ................................................................................17

*Salinger v. Colting*,
   607 F.3d 68 (2d Cir. 2010) .............................................................................14, 15

*Shull v. TBTF Prods. Inc.*,
   2019 WL 5287923 (S.D.N.Y. Oct. 4, 2019).....................................................16, 17

*Sinicropi v. Milone*,
   915 F.2d 66 (2d Cir. 1990) ....................................................................................9

*Suntrust Bank v. Houghton Mifflin Co.*,
   268 F.3d 1257 (11th Cir. 2001) ...........................................................................15

*Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*,
   338 F.3d 127 (2d Cir. 2003) ................................................................................12

*Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*,
  996 F.2d 1366 (2d Cir. 1993) ...................................................................................13

*Williams v. Crichton*,
  84 F.3d 581 (2d Cir. 1996) ..............................................................................11, 14

*Youssef v. Halcrow, Inc.*,
  504 F. App'x 5 (2d Cir. 2012) ...............................................................................17

**Rules**

Federal Rule of Civil Procedure 8 ........................................................................5, 8, 10

Federal Rule of Civil Procedure 12(b)......................................................................4, 9

Federal Rule of Civil Procedure 12(g)......................................................................4, 8

## PRELIMINARY STATEMENT

OpenAI's motion to dismiss "output claims" is another example of Defendants using MDL centralization not as a tool for coordination, but as a weapon to raise arguments they could have made – and in fact waived – years earlier. OpenAI does not dispute that allegations it targets have been, virtually verbatim, in the *Authors Guild* Class complaint since September 19, 2023 and the *Tremblay* Class complaint since March 13, 2024. In the *Authors Guild/Alter* action, OpenAI "consent[ed] and stipulate[d] not to seek to dismiss, under Federal Rule of Civil Procedure 12(b), Plaintiffs' currently-pleaded claims." *Authors Guild* Dkt. 56 at 3; 59. In *Tremblay*, OpenAI moved to dismiss more than 17 months ago, *declined* to move to dismiss the output claims pleaded there, and is therefore barred from raising a new ground for dismissal now. FRCP 12(g)(2). OpenAI's ability to move to dismiss these allegations was waived long ago, and nothing about the MDL changes that.

OpenAI's motion should be denied for another, independent reason. The Consolidated Class Action Complaint ("Complaint" or "MDL Complaint") squarely and adequately alleges that OpenAI's products output infringing derivative works, including summaries and sequel outlines of Plaintiffs' works. There is no *requirement* (nor has OpenAI pointed to one) that Plaintiffs attach each of these infringing outputs as exhibits to the Complaint. Nor is there any possible prejudice as Plaintiffs *have already produced the materials in question* over the nearly two years since the *Tremblay*, *Authors Guild*, and *Alter* actions were filed, and are in the process of negotiating OpenAI's actual output logs. In fact, as OpenAI admits, outputs of its models will be a subject of discovery regardless of whether the output claims remain in the case.

At bottom OpenAI's motion represents an untimely and improper attempt to achieve drastic substantive modification of the pre-existing scope of this case by leveraging the procedural mechanism of MDL coordination. This attempt flouts the Court's directive to avoid

1

"briefing and determination of [] 12(b)(6) motions" which "would slow everything down[.]" Hr'g Tr. May 22, 2025 at 25:16-23.

The Court thus should deny OpenAI's partial motion to dismiss and allow the Output Claims to proceed.

**ARGUMENT**

### I.    LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Keiler v. Harlequin Enterprises Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint "does not need to contain detailed or elaborate factual allegations" to survive a motion to dismiss. *Id.* Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In assessing whether a complaint plausibly gives rise to an entitlement to relief, the court must "accept[] all factual allegations in the complaint as true and draw[] all reasonable inferences in plaintiffs' favor." *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 137 (2d Cir. 2013).

### II.    OPENAI WAIVED ITS RIGHTS UNDER 12(b)(6) TO MOVE TO DISMISS OUTPUT CLAIMS

OpenAI's motion tries to capitalize on the recent MDL centralization to unwind the stipulation it entered in the *Alter/Authors Guild* action and get a do-over of motion to dismiss briefing long completed in the *Tremblay* action.

*First*, and regardless of what OpenAI now claims, the record is clear that the *Tremblay* case, No. 3:23-cv-03223, always had output claims, and OpenAI failed to get those claims

2

dismissed. Indeed, the very pages of the November 2023 *Authors' Guild* transcript which OpenAI quotes on the first page of its motion expressly endorse the fact that the *Tremblay* case included output claims. *See Authors Guild*, Dkt. 44, Nov. 29, 2023 Hr'g Tr. at 9:11-13 ("THE COURT: Because what I'm doing, I assume you realize is, I want to get a sense of the motion to dismiss under the first-file rule or stay [relative to the California class actions.]); *id.*at 11:20-12:4 ("MR. SHOLDER: . . . The other cases in California deal much more with the aspect of what's going on inside, Is the large language model itself a derivative work? *Is the output derivative works?*") (emphasis added). More importantly, and also left out of OpenAI's recounting of events, *counsel for OpenAI then confirmed that output claims were already in the Tremblay action* and that OpenAI would seek to dismiss them. *Id.* at 12:22-25 ("THE COURT: What's the basis of the motion to dismiss [in California]? Let me ask you, sir. MR. GRATZ: Your honor, we are moving to dismiss the claims that Ms. Geman described that are not present in this case.").[1] As set forth below, OpenAI was ultimately unsuccessful in keeping output claims out of the *Tremblay* case.

Because output claims have been in these cases from the start, dismissing Plaintiffs' output claims now would represent a radical reconfiguration of the substantive scope of the cases consolidated in the MDL, something the Court expressly rejected. Hr'g Tr. May 22, 2025 at 24:19-24; 25:13-25. Plaintiffs already complied with the Court's instruction not to broaden the scope of the MDL by introducing new claims into this proceeding. Prior to centralization, *Tremblay* plaintiffs moved for leave to amend their complaint to add several new causes of action. *Tremblay*, Dkt. 370. Pursuant to the Court's clear directive of "no new causes of action," Hr'g Tr. May 22, 2025 at 20:18-19, those claims are not pled in the MDL Complaint. The Court

---

[1] To be sure, counsel in the *Authors Guild* action repeatedly noted the relevance of output materials to fair use even for the non-output claims. *See Authors Guild*, Dkt. 44 Nov. 29, 2023 Hr'g Tr. at 14:15-23.

should not now countenance OpenAI's attempt to further narrow the scope of the consolidated complaint by dismissing claims that were already in suit and the subject of discovery.

OpenAI ignores this aspect of *Tremblay* and instead spends more than a page describing its cramped understanding of output claims in the *Authors Guild* matter. Mot. at 1. But as a full timeline makes clear, output claims have always been in the *Tremblay* complaint:

- June 28, 2023: *Tremblay* complaint is filed. It includes allegations regarding output infringement. Dkt. 1, ¶ 53, 59

- August 28, 2023: OpenAI moves to dismiss Plaintiffs' output claims. Dkt. 33 at 8-10.

- February 12, 2024: Judge Martínez-Olguín dismisses Plaintiffs' output claims *without prejudice.* Dkt. 104 at 5.

- March 13, 2024: *Tremblay* Plaintiffs file amended complaint curing deficiencies identified in the order. Dkt. 120. Exhibit B to the *Tremblay* complaint consisted of 40 pages of ChatGPT outputs the N.D. Cal. plaintiffs claimed infringed their copyrights.[2] Dkt.120-2. This complaint included the following allegations:

  o "When ChatGPT was prompted to *summarize books written by each of the Plaintiffs, it generated very accurate summaries.* These summaries are attached as Exhibit B." Dkt. 120 ¶ 51 (emphasis added).

  o "Plaintiffs never authorized OpenAI to make copies of their books, *make derivative works, publicly display copies (or derivative works), or distribute copies (or derivative works).* All those rights belong

---

[2] Though Plaintiffs did attach infringing outputs to the *Tremblay* complaint, they were not required to do so (as discussed *infra* at III) and the fact Plaintiffs here did not do here—instead opting to *describe* the outputs in the body of the Complaint where such was already in the record of the case (not to mention already produced to OpenAI) the same—does not alter the waiver analysis.

exclusively to Plaintiffs under copyright law" Dkt. 120 ¶ 64 (emphasis added).

- March 17, 2024: OpenAI files a motion to dismiss the state law claims in the amended complaint but *does not move to dismiss Plaintiffs' output claims*. Dkt. 122.

Federal Rule of Civil Procedure 12(g)(2) provides: "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." In other words, "Rule 12(g) contemplates a single pre-answer motion and generally precludes subsequent pre-answer motions to dismiss." *Allstate Ins. Co. v. Elzanaty,* 929 F. Supp. 2d 199, 214 (E.D.N.Y. 2013) (citations omitted); *see also Niantic, Inc. v. Global++,* 2020 WL 8620002, at *4 (N.D. Cal. Sept. 2, 2020) (finding that moving party had "waived their opportunity to raise their previously unasserted [] argument in their current motion to dismiss" as to certain claims that were "based on *substantially* the same allegations in the amended complaint and the original complaint.") (emphasis added); *In re Livent Sec. Litig.,* 193 F. Supp. 2d 750, 753 (S.D.N.Y. 2002) (denying successive Rule 12(b)(6) motion where "these aspects of this matter already have been through two rounds of motions to dismiss" which "exhaustively addressed numerous initial objections to the sufficiency of the complaints").

Here, OpenAI has waived its right to bring a 12(b)(6) motion as to Plaintiffs' Output Claims. As noted, Plaintiffs' claims mirror those in the amended *Tremblay* Complaint (Dkt. 120), and OpenAI declined to move to dismiss them following the *Tremblay* Plaintiffs' amendment. They cannot do so now.

*Second*, with respect to the *Alter/Authors Guild* action, No. 1:23-cv-08292, OpenAI *expressly stipulated* to forgo any motion to dismiss the consolidated amended complaint in

exchange for sequencing summary judgement before class certification and not moving to transfer or dismiss the (then-forthcoming) consolidated amended complaint. *See* Dkt. 56 at 3 ("Defendants consent and stipulate not to seek to dismiss, under Federal Rule of Civil Procedure 12(b), Plaintiffs' currently-pleaded claims.").[3] That consolidated amended complaint at time of stipulation included the same allegations OpenAI now seeks to dismiss here—namely, allegations that "[w]hen prompted ChatGPT generated an infringing, unauthorized, and detailed" output regarding the Plaintiffs' works and/or "accurate summar[ies] of" the works. *See* Dkt. 1 at ¶ 139-42 (Authors Guild), 148-52 (Baldacci), 169-71 (Connelly), 179-81 (Day), 188-91 (Franzen), 199-201 (Grisham), 244-247 (Martin), 255-57 (Picoult).[4] Plaintiffs filed their consolidated amended complaint on February 2, 2024, *see* Dkt. 67, 69 (corrected), and OpenAI never moved to dismiss *any* claim in that consolidated class action complaint despite the express inclusion of allegations that ChatGPT outputs were "infringing." Crucially, Plaintiffs filed their consolidated complaint months after the statements which OpenAI quotes in its Motion and which were made before the *Alter* and *Author's Guild* actions were ever consolidated. Once they were consolidated and once plaintiffs' consolidated complaint included express allegations that ChatGPT generated infringing outputs, OpenAI was on notice regarding Plaintiffs output claims and OpenAI never sought to dismiss—and indeed expressly *waived* their right to seek to dismiss—these claims.

To the extent OpenAI seeks to renege on this agreement and overcome its total failure to seek dismissal of Plaintiffs' output claims on account of the MDL, *see* Mot. at 4 n.5 (arguing

---

[3] Stipulations made during litigation and approved by courts, including those that waive certain defenses, are enforceable contracts. *Sinicropi v. Milone*, 915 F.2d 66, 68 (2d Cir. 1990). "Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation." *BCM Dev., LLC v. Oprandy*, 490 F. App'x 409, 409 (2d Cir. 2013) (citations omitted).

[4] The consolidated amended complaint at the time of stipulation also included allegations as to other Plaintiffs, but the above is limited to the plaintiffs in the current MDL Complaint.

that the stipulation does not apply because different plaintiffs are involved), that is expressly barred by the Court's statement that the MDL proceedings would not alter the pre-existing scope of the case. Hr'g Tr. May 22, 2025 at 37:16-19. OpenAI previously did not seek to dismiss the output claims in the *Alter/Authors Guild* action on its own accord; it cannot sneak a do-over through the procedural form of an MDL.

OpenAI's motion is curiously silent on all this history. Instead, OpenAI seeks—17 months later—to exploit these centralized proceedings (a centralization that it vigorously and vociferously sought to bring about) by trying to get a do over. The Court should reject OpenAI's effort to take advantage the MDL centralization it demanded to undo its own failures to dismiss the output claims in *Tremblay* and its express waiver of the right to file a Rule 12 motion in *Alter/Authors Guild*.

## III.    PLAINTIFFS ADEQUATELY PLEAD OPENAI OUTPUTS ARE INFRINGING

Regardless, even assuming OpenAI has not waived, the consolidated complaint here is adequately pleaded. In copyright infringement cases, a complaint need only allege: "(1) which specific original works are the subject of the copyright claim, (2) that plaintiff owns the copyrights in those works, (3) that the copyrights have been registered in accordance with the statute, and (4) by what acts and during what time the defendant infringed the copyright." *Jacobs v. Carnival Corp.*, 2009 WL 856637, at *4 (S.D.N.Y. Mar. 25, 2009) (citations omitted).

### A.  Plaintiffs Adequately Plead Substantial Similarity

Copyright claims may only be dismissed at the pleading stage for failure to sufficiently allege substantial similarity in limited circumstances. A district court may determine noninfringement on the pleadings *only* when either (1) "the similarity concerns only noncopyrightable elements of [plaintiff's work]" or (2) the works are "not substantially similar as a matter of law[.]" *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63-

64 (2d Cir. 2010); *see also Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 945 (9th Cir. 2023) ("it is generally disfavored for copyright claims to be dismissed for lack of substantial similarity at the pleading stage."). Neither circumstance is present.

Here, for each named Plaintiff, the Complaint details at least three discrete infringing outputs—identifying the relevant copyrighted work, the nature of the prompt, the content generated, and the precise way the output appropriates protected expression.

Illustrative examples include:

- Baldacci: ChatGPT "accurately generated summaries" of *The Collectors, The Finisher*, and *One Good Deed* and produced a "detailed outline" for a sequel titled *The Complex Justice*, reusing Baldacci's original characters. Compl. ¶¶ 176-178.

- Grisham: ChatGPT drafted an outline for *The Kingdom of Consequences*, a putative follow-up to *The King of Torts*, reusing Grisham's characters. Compl. ¶ 235.

- Picoult: ChatGPT supplied a "detailed outline for the next purported installment of *The Small Great Things*, which ChatGPT titled *Small Great Things: Unfinished Business*, using the same characters from Picoult's existing book. Compl. ¶ 268.

These well-pled facts are more than "threadbare." They describe, with specificity, the protected elements—characters, narrative arcs, and plot resolutions—that ChatGPT generated. Such allegations of plot- and character-level similarity state a viable claim. These protected elements are the heartland of copyright protection. As the Second Circuit has long recognized, "characters and events" that "spring from the imagination" of authors are "copyrightable, creative expression." *Castle Rock Entm't v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 139 (2d Cir. 1998). *See also Williams v. Crichton,* 84 F.3d 581, 588 (2d Cir. 1996) (noting that copyright protection extends to "the sequence of events and the development of the interplay of characters"); *Penguin Random House v. Colting*, 270 F. Supp. 3d 736, 746-47 (S.D.N.Y. 2017) (differentiating "stock characters" from protectable, named ones).

The Complaint alleges multiple, specific examples of infringing outputs, including summaries of Plaintiffs' works and detailed outlines for sequels of these works. *See, e.g.,* Compl. ¶¶ 177-79, 268-70, 287-90. The Complaint also describes these infringing derivative works in detail, with reference to their ChatGPT-generated titles and protected elements, like named characters. *See, e.g.,* Compl. ¶¶ 268, 269, 289. At the pleading stage, plaintiffs need not set forth detailed factual evidence establishing substantial similarity, they must only plausibly allege that Defendants' outputs are substantially similar to the protected elements reflected in their works. They have done so.

These allegations also demonstrate that Plaintiffs will ultimately be able to satisfy the so-called "ordinary observer" test for literary works. The test asks whether "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Peter F. Gaito Architecture*, 602 F.3d at 66 (quoting *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995)). Substantial similarity exists when (1) the "protected expression in the earlier work [] was copied" and (2) "the amount that was copied is 'more than de minimis.'" *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.,* 338 F.3d 127, 131 (2d Cir. 2003) (quoting *Castle Rock Entm't,* 150 F.3d at 137-38). *See also* 3 Nimmer § 13.03 [A], at 13-28 to 13-29 (1992) (substantial similarity can take the form of "fragmented literal similarity" or "comprehensive nonliteral similarity"). Importantly, substantial similarity does not require verbatim copying. In Judge Learned Hand's words, copyright "cannot be limited literally to the text, else a plagiarist would escape by immaterial variations." *Nichols v. Universal Pictures Co.*, 45 F.2d 119, 121 (2d Cir. 1930). Substantial similarity can thus take the form of "fragmented literal similarity" or "comprehensive nonliteral similarity." 3 Nimmer § 13.03 [A], at 13-28 to 13-29 (1992).

Courts in this circuit regularly recognize that summaries of works can be substantially similar to their underlying copyrighted works. Indeed, by its very definition, a summary

includes the "main idea" of another work, in abridged form.[5] The Second Circuit held a summary was substantially similar to plaintiff's television series where it was "essentially a detailed recounting of the first eight episodes of the series." *Twin Peaks Prods.*, *Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1372-73 (2d Cir. 1993) ("Every intricate plot twist and element of character development appear in the Book in the same sequence as in the teleplays."). Similarly, in *Colting*, defendants published "children's guides" to copyrighted novels, including *Breakfast at Tiffany's* and *The Old Man and the Sea.* 270 F. Supp. 3d at 742. These "guides" included the titles and authors of plaintiffs' works, with plot summaries. *Id.* Judge Rakoff found the guides substantially similar to the underlying novels: "[D]efendants' Guides are not even superficially distinct from the respective Novels. Instead, they are explicitly based on plaintiffs' Novels, and seek in defendant's words, to 'introduce' them to children through 'colorfully illustrated story summaries and kid-friendly analyses.'" *Id.* at 745.

Here, the GPT-generated summaries alleged in the complaint are exactly the type of "detailed recounting" that constituted substantial similarity in *Twin Peaks* and *Colting*. *See, e.g.*, Compl. ¶ 277 ("when prompted with questions about Plaintiff Schiff's books, ChatGPT returned detailed, accurate summaries of them"). The single case OpenAI cites on this specific point is readily distinguishable: it involved factual summaries of news articles, not the use of fictional characters or detailed summaries usurping the presentation of facts in long-form books. *See New York Times Co. v. Microsoft Corp.*, 777 F. Supp. 3d 283, 328 (S.D.N.Y. 2025) ("The alleged abridgments are detailed summaries, usually in bullet point form, of the *facts* contained in CIR's articles.") (emphasis added). It is paradigmatic that "facts are not copyrightable." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 344 (1991). In

---

[5] "Summary," Cambridge Dictionary,
https://dictionary.cambridge.org/dictionary/english/summary (last visted Aug. 12, 2025) ("a short, clear description that gives the main facts or ideas about something").

contrast, the summaries outputted by OpenAI's GPT models here parrot the *protectable* elements of the creative works at issue here—their themes, plots, and characters.

Even for Plaintiffs' nonfiction works, ChatGPT generates derivative outputs that borrow the "selection, coordination, and arrangement" of facts that render the works original. *Feist*, 499 U.S. at 358. For instance, one GPT-generated work summarizes the opening of Plaintiff Stacy Schiff's book, *Cleopatra: A Life*, by incorporating the author's original creative choices: "The biography starts by setting the stage in the ancient world, describing the political and cultural context of Cleopatra's time. Stacy Schiff then delves into Cleopatra's early life, tracing her lineage, education, and the complex political climate in which she came of age." Stein Decl., Ex. H, at -298. The creative decision to begin a biography by describing the "political and cultural context" of the era is exactly the kind of arrangement and expression of facts that is entitled to copyright protection. As the Second Circuit has repeatedly noted, though the Copyright Act "does not protect facts or ideas set forth in a work, it *does* protect that author's manner of expressing those facts and ideas." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 220 (2d Cir. 2015). *See also Hachette Book Grp., Inc. v. Internet Archive*, 115 F.4th 163, 187 (2d Cir. 2024) (holding that copyright protection extends to nonfiction books).

In addition to alleging that ChatGPT generated detailed plot summaries of Plaintiffs' works, Plaintiffs alleged that Defendants' ChatGPT model produced detailed outlines of potential sequels to those works. *See, e.g.,* Compl. ¶¶ 268, 269, 289. When evaluating claims of infringement involving literary works, the Second Circuit noted that the substantial similarity analysis encompasses "such aspects as the total concept and feel, theme, characters, plot, sequence, pace, and setting" of the works. *Williams,* 84 F.3d at 588.

Courts have specifically addressed the substantial similarity of sequels that borrow characters and themes from the underlying copyrighted works. *See Salinger v. Colting*, 607 F.3d 68, 71-72 (2d Cir. 2010); *Suntrust Bank v. Houghton Mifflin Co*., 268 F.3d 1257, 1259

(11th Cir. 2001). In *Salinger*, the defendant's sequel to J.D. Salinger's *Catcher in the Rye* was deemed substantially similar. *Id.* at 83. The Court explained that the sequel's "Mr. C" character shared many similarities with Salinger's Holden Caulfield: "Mr. C narrates like Holden, references events that happened to Holden, and shares many of Holden's notable eccentricities." *Id.* at 72. Likewise, in *Suntrust Bank*, an unauthorized sequel to Margaret Mitchell's *Gone With the Wind* was substantially similar because it used "the very same copyrighted characters, settings, and plot." 268 F.3d at 1267.

The allegations in the complaint also plausibly allege the potential of ChatGPT to create the same type of infringing derivative works *en masse* with little to no human effort. The ChatGPT-generated sequel outlines described in the complaint adopt the creative cores of the underlying works. *See, e.g.*, Compl. ¶¶ 104, 177-78, 191-92. Despite OpenAI's attempt to characterize such characters as generic "stock characters," Mot. at 10, they are anything but. ChatGPT outputs include characters not merely with the same stereotypical archetype, but the same first and last names, the same romantic partners, and the same careers. Compl. ¶¶ 104, 177-78, 191-92. And many of these "sequel" outlines make explicit reference to the copyrighted books they are based on. *Id.* These ChatGPT-generated derivative works borrow the core protected elements of Plaintiffs' works—their plots, characters, themes, and even titles.

In sum, Plaintiffs have sufficiently pled substantial similarity. Defendants may have *defenses* to these claims related to whether the facts as discovered and presented to the jury are sufficient to prove *liability* for infringement, but that is not the same as showing that Plaintiffs have failed to plausibly plead infringement. Rule 12(b)(6) is meant "to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (citations omitted). OpenAI's motion is not the appropriate mechanism to address the merits

of whether ChatGPT's outputs are in fact substantially similar to Plaintiffs' works. That task is one for the jury.[6]

## IV.    PLAINTIFFS ARE NOT REQUIRED TO ATTACH INFRINGING OUTPUTS

OpenAI next seeks to invent a new rule out of whole cloth by arguing that "courts regularly dismiss claims where the works at issue were not attached to the complaint . . . ." Mot. at 7. But the claims in those cases were not dismissed *because* the plaintiffs failed to attach allegedly infringing works to the complaint. They were instead dismissed because of underlying problems with threadbare allegations. Indeed, Plaintiffs have found no case, and OpenAI cites none, that suggests, let alone holds, that "attachments" are required to adequately plead a claim.

OpenAI also is incorrect to the extent it argues that such attachments, if not required, are at least "typical" by citing *Shull v. TBTF Prods. Inc.*, 2019 WL 5287923, at *2 (S.D.N.Y. Oct. 4, 2019). *See* Mot. at 7 (citing *Shull*, 2019 WL 5287923, at *2). In *Shull*, the Court did not rely on exhibits attached to the complaint, but rather *on exhibits attached to the Parties' motion*

---

[6] OpenAI cites *Hord v. Jackson*, 281 F. Supp. 3d 417 (S.D.N.Y. 2017), for the proposition that "[t]he bar for substantial similarity in a character is set quite high." Mot. at 10. But in that case, the Court dismissed a claim based on wildly divergent characters. *See Hord*, 281 F. Supp. 3d at 426 (identifying one such difference: a mother active in the drug trade compared with a mother who had no direct involvement). In fact, none of the cases cited by OpenAI on character-based infringement involved the *same exact* characters, a type of similarity that no one disputes is alleged in the Complaint. OpenAI's cases as to derivative infringement are similarly off point. *See, e.g.*, *Reyher v. Children's Television Workshop*, 533 F.2d 87 (2d Cir. 1976) (finding no substantial similarity between a story set in Africa to one in the Ukraine and finding that common elements amounted to nothing more than "scenes a faire"). Likewise, *Litchfield v. Spielberg*, 736 F.2d 1352 (9th Cir. 1984) involved a lawsuit brought against Steven Spielberg by the creators of a play in which "two aliens . . . are temporarily stranded on Earth when their spacecraft is immobilized by gravity" and visit the North Pole, the Andes, and Japan. *Id.* at 1354. The Court there concluded that, "[n]o lay observer would recognize *E.T.* as a dramatization or picturization of [Plaintiff's work]." *Id.* at 1357. The comparison to prior iterations of complaints in *Kadrey v. Meta* and *Tremblay* also are inapt, as Plaintiffs have in the operative Complaint described dozens of infringing outputs with specificity.

*to dismiss briefing. See id.* Plaintiffs are attaching the material in question to the instant opposition, *see* Stein Decl.*, Exs. A-K, exactly what the Court permitted in *Shull*.[7]

Moreover, Rule 8's liberal pleading standard can easily be satisfied by descriptions of copyrighted and infringing works. Plaintiffs' allegations go far beyond conclusory recitals of elements; the Complaint identifies specific protectable elements of the infringing works identified in outputs. *See, e.g.,* Compl. ¶¶ 213, 214, 268, 269, 289. While it may in certain cases be helpful to provide the court with a side-by-side comparison of a copyrighted work and an infringing work, such an approach, if required in this case, would amount to a detailed fact-finding inquiry involving dozens of asserted works and dozens more illustrative infringing outputs. In cases involving large numbers of potentially infringing works, like here, "[a]lleging copyright infringement based on *examples* of infringement . . . is sufficient to state a plausible claim." *ADR Int'l Ltd. v. Inst. for Supply Mgmt. Inc.*, 667 F. Supp. 3d 411, 424 (S.D. Tex. 2023) (emphasis added).

## V.    PLAINTIFFS SHOULD, AT A MINIMUM, BE GRANTED LEAVE TO AMEND

Should the Court identify any pleading deficiency, Plaintiffs respectfully request leave to amend, including because there would be no resulting delay in discovery or prejudice to OpenAI. Rule 15(a) mandates that leave to amend be "freely give[n.]" A court may deny leave

---

[7] Even if the inclusion of infringing "attachments" were a requirement, such a requirement could be met here, as the Court may consider the examples of the alleged outputs in the Complaint that have been produced in this case. Plaintiffs attach eleven previously-produced examples of the infringing outputs described in the complaint to this Opposition. *See* Declaration of Joshua Michelangelo Stein ("Stein Decl."), Exs. A-K. Where, as here, the documents in question were referenced in the Complaint, exhibits attached to an opposition to a motion to dismiss can be properly before the court in evaluating the pleadings. *See Roth v. CitiMortgage Inc.*, 756 F.3d 178, 182 n.4 (2d Cir. 2014) (documents attached to plaintiff's opposition to CitiMortgage's motion to dismiss "are properly before the court"); *Youssef v. Halcrow, Inc.*, 504 F. App'x 5, 7 (2d Cir. 2012) (Summary Order) ("in assessing the defendant's motion to dismiss, the district court properly considered an addendum to Youssef's employment application, which Youssef attached as an exhibit to his opposition"). Both the creation and production of these outputs predate this Complaint, *see* Stein Decl. ¶¶ 2-11. They can therefore be considered. *See Roth*, 756 F.3d at 182 n.4; *see also Shull*, 2019 WL 5287923, at *2 (considering attachments to a motion to dismiss and the opposition to the same).

to amend only for "good reason," such as "futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). None of these factors, including prejudice to OpenAI, are present here. On May 22, the Court ordered the consolidated amended complaint to include "the same products and causes of action that have already been asserted in the pending putative class actions," meaning both the *Alter/Authors Guild* and *Tremblay* cases. No. 1:25-md-03143, Dkt. 60 (Case Management Order #2) at 2. The Court's order reiterated what the Court stated from the bench at a status conference earlier that same day. H'rg Tr. May 22, 2025 at 20:17-23, 24:19-24, 37:16-19.

OpenAI's effort to exclude output claims disregards the effect of the Case Management Order by depriving Plaintiffs of a claim that had long been an established part of what was pled and litigated in the *Tremblay* matter and the *Alter/Author's Guild* matter. OpenAI's motion also ignores that the scope of discovery in both the *Alter/Author's Guild* and *Tremblay* cases has always included output evidence, as model outputs will be the subject of discovery in connection with OpenAI's fair use defense. Indeed, OpenAI notes in its Motion and does not appear to contest that "ChatGPT's outputs [are] relevant to fair use and damages." Mot. at 1. Because output evidence has been directly relevant in both of the underlying cases, regardless of their pre-consolidation differences, output claims would result in no expansion of relevant discovery. Furthermore, as discussed in the previous section, Plaintiffs already produced the infringing outputs on which they base their output infringement allegations in the MDL Complaint. Compl. ¶¶ 166-292; Stein Decl., Exs. A-K (outputs). That fact alone militates against any finding of prejudice against Defendants here.

OpenAI has had notice of the claims themselves and the necessary scope of discovery since the beginning of both cases. The allegations in the complaint easily clear Rule 8's low

bar by providing "fair notice of what the claim is and the grounds upon which it rests." *Keiler*, 751 F.3d at 70.

Finally, should the Court find OpenAI's arguments not waived and the complaint not adequately pleaded, it would be especially appropriate to allow amendment here. OpenAI stipulated not to dismiss the previously-operative complaint in *Alter/Authors Guild* containing the same allegations and same wording. Had OpenAI successfully moved then, Plaintiffs would have had an opportunity to cure. At minimum then, even if the Court finds that the stipulation did not effect a waiver and that the claims have not been part of either the *Tremblay* or *Alter/Authors Guild* cases, granting leave to amend in light of the stipulation would be appropriate.

## CONCLUSION

For the foregoing reasons, the Court should deny OpenAI's motion to dismiss in full. Alternatively, should the Court identify any pleading deficiency, Plaintiffs respectfully request leave to amend.

Dated: August 14, 2025
New York, New York

Respectfully submitted,

*/s/ Justin Nelson*
Justin A. Nelson (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX  77002
Telephone: 713.651.9366
jnelson@susmangodfrey.com

*Interim Lead Counsel for Class Plaintiffs*

Alejandra C. Salinas (*pro hac vice*)
Amber B. Magee (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Tel.: 713.651.9366
asalinas@susmangodfrey.com
amagee@susmangodfrey.com

Rohit D. Nath (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: 310.789.3100
rnath@susmangodfrey.com

J. Craig Smyser
Charlotte Lepic
Henry Walter
SUSMAN GODFREY L.L.P.
One Manhattan West, 51st Floor
New York, NY 10001
Tel.: 212.336.8330
csmyser@susmangodfrey.com
clepic@susmangodfrey.com
hwalter@susmangodfrey.com

Jordan W. Connors (*pro hac vice*)
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Tel.: 206.516.3880
jconnors@susmangodfrey.com


*/s/ Joshua Michelangelo Stein*
Joshua Michelangelo Stein (California SBN
298856)
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
jstein@bsfllp.com

*Counsel for Class Plaintiffs*

## CERTIFICATE OF WORD COUNT

Pursuant to Local Civil Rule 7.1, I hereby certify that the foregoing document was typed using 12-point, Times New Roman font and contains 5,263 words, exclusive of the case caption, table of content, table of authorities, signature blocks, and certificates, but does include material in footnotes.

/s/ *Joshua Michelangelo Stein*
Joshua Michelangelo Stein (California SBN 298856)
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
jstein@bsfllp.com

*Counsel for Class Plaintiffs*